FILED
8/30/2017 11:00 AM
Donna Kay McKinney
Bexar County District Clerk
Accepted By: Krystal Gonzalez

cit cml sac1

CAUSE NO. **2017CI16478**

| | | |
|---|---|---|
| AMJ COMMERCIAL HOLDINGS, LLC and EDUCATION MANAGEMENT SERVICES, LLC | § § § | IN THE DISTRICT COURT |
| Plaintiffs | § § | |
| v. | § § | 150 JUDICIAL DISTRICT |
| HARTFORD FIRE INSURANCE COMPANY | § § § | |
| Defendant | § | BEXAR COUNTY, TEXAS |

## PLAINTIFF'S ORIGINAL PETITION AND REQUESTS FOR DISCLOSURE

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiffs, AMJ COMMERCIAL HOLDINGS, LLC and EDUCATION MANAGEMENT SERVICES, LLC, file this original petition against Defendant, HARTFORD FIRE INSURANCE COMPANY, in which Plaintiffs are seeking monetary relief over $1,000,000. For causes of action against Defendant, Plaintiffs would show this honorable court the following:

### I. Parties, Venue, and Discovery Level

Plaintiff, AMJ COMMERCIAL HOLDINGS, LLC (hereinafter "AMJ"), is a Texas limited liability company that owns a commercial office building located at 11503 Jones Maltsberger, San Antonio, Texas 78216. AMJ is also an insured on this building

Plaintiff, EDUCATION MANAGEMENT SERVICES, LLC (hereinafter "AMJ"), is a Texas limited liability company that owns a commercial office building located at 11503 Jones Maltsberger, San Antonio, Texas 78216 and is also an insured on this building

Defendant, HARTFORD FIRE INSURANCE COMPANY (hereinafter "Hartford"), is a foreign fire and casualty insurance company doing business in Texas and can be served by serving its registered agent for process, CT Corporation System, located at 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

The venue of this case is proper in Bexar County, Texas under Sections 15.002 and 15.032 of the Texas Civil Practices and Remedies Code and Section 17.56 of the Deceptive

1

EXHIBIT C

Trade Practices-Consumer Protection Act (hereafter the "DTPA").

Plaintiffs intend to conduct discovery for this case under a level three discovery control plan as allowed by Rule 190.4 of the Texas Rules of Civil Procedure.

This lawsuit is subject to the Standing Pretrial Order concerning Bexar County Commercial Hail Claims, a copy of which is attached hereto as Exhibit "A."

### III. Agency and Respondeat Superior

Whenever in this petition it is alleged that Defendant did any act or thing, it is meant that the Defendant or its agents, officers, servants, employees, or representatives did such act or thing. It is also done with the full authorization or ratification of Defendant or done in the normal routine, course, and scope of the agency or employment of Defendant or its agents, officers, servants, employees, or representatives.

### IV. Conditions Precedent

All conditions precedent to recovery have occurred or been performed.

### V. Facts of the Case

Plaintiffs, AMJ Commercial Holdings, LLC and Education Management Services, LLC (hereinafter collectively referred to as "AMJ"), purchased commercial insurance from Hartford (Policy Number 65UUNZR6972) to cover property losses at its commercial office building located at 11503 Jones Maltsberger, San Antonio, Texas 78216, for the policy period of December 22, 2015 through December 22, 2016. On or about April 12, 2016, during the subject policy period, a wind and hail storm caused substantial damage to the AMJ's building. On or about April 27, 2016, AMJ reported this loss to Hartford and its agents, who assigned this loss the claim number of CP0016781464 for the April 12, 2016 date of loss.

After receiving the claim, Hartford assigned its field adjuster, Steve Sunzeri, and a roofing consultant, Hancock Claims Consultants, to inspect the loss. They determined that the damage to AMJ's roof was not from hail, but was the result of wear and tear as well as deterioration. They did, however, accept coverage for the hail damage to the HVAC systems on

**EXHIBIT C**

the roof as well as the affected skylights and fiberglass roof on building number 11523. As a result, in a June 21, 2016 letter from Hartford's inside claim representative, Brandon Sullivan, Hartford denied Plaintiff's insurance claim concerning the storm damage to the roof.

Suspecting that Hartford had wrongfully denied the roof damage portion of their insurance claim, on June 20, 2016, AMJ retained a Texas licensed public insurance adjuster, Texas Elite Public Adjusters, LLC (hereinafter "Texas Elite"), to assist AMJ with its insurance claim. In a June 21, 2016 letter, Texas Elite gave Hartford notice that AMJ had retained it as the insured's public insurance adjuster. Texas Elite hired Robert Kent Enterprises (hereafter "Kent") to inspect and document the damage to AMJ's building as a result of the April 12, 2016 storm. In its inspection of the property, Kent documented substantial damage to the AMJ's building. Specifically, it found substantial damage to the roof, the exterior of the building, and the building's HVAC units. In its July 13, 2016 estimate, Kent estimated this storm damage at $2,162,201.63.

In a July 28, 2016 email, adjuster Steve Sunzeri informed Texas Elite that AMJ had previously requested a re-inspection and that Hartford had retained Bradley F. Coffman, P.E. of PT&C LWG Forensic Consulting Services (hereafter "PT&C") to inspect AMJ's building and report on its damage from the April 12, 2016 storm. AMJ believes that Hartford hires these adjusters, engineers, and roofing consultants, especially PT&C, because Hartford knows that they are biased for insurers and that they will give Hartford low-balled and result-oriented estimates and reports on which Hartford can either deny or under pay an insured's storm damage insurance claim.

PT&C inspected the storm damage on July 12, 2016. True to form, in an August 6, 2016 report, PT&C determined: (1) that the hailstones during the April 12, 2016 storm were of insufficient size and/or magnitude to damage AMJ's gravel ballasted built-up roof; (2) that the moisture intrusion from the skylights was attributable to cracks and punctures in the plastic panes which were caused by impacts from gravel which ballasted the roof; (3) that mechanical

EXHIBIT C

damage, like foot traffic, potentially contributed to the punctures and/or cracks; (4) that the moisture stains and elevated moisture readings found in the building suites 1139/1140 were attributable to breaches in the roof caused by weathering; (5) that the moisture stained ceiling tiles within suite 1215 and the break room were attributable to breaches in the moisture mitigation system of the roofing above areas that had been repaired; and (6) that deficiencies in HVAC insulation in Suite 1215 contributed to the presence of the interior moisture presence.

Based on this biased and unsubstantiated inspection, report, and investigation, in an August12, 2016 letter to AMJ, Hartford, who only found damage to the HVAC system as a result of the April 12, 2016 storm, determined that the replacement cost amount of this damage at $90,140.81, less recoverable depreciation of $43,362.03 for an actual cash value amount of $46,778.78. After AMJ's $5,000 deductible, Hartford only paid AMJ the low-ball amount of $41,778.78.

On September 2, 2016, Kent supplemented his estimate to include repairs for the interior water damage and additional roof damage totaling $2,506,917.60. AMJ also hired engineer, Neil B. Hall, to assist in the determination of the extent and cause of the damage to AMJ's building from the April 12, 2016 storm and to recommend a protocol for returning the building to a pre-loss condition. In his January 5, 2017 report, Mr. Hall documented the damage to the AMJ's building as a result of the April 12, 2016 storm and refuted PT&C's findings in its report. In his report, Mr. Hall also concluded that the April 12, 2016 storm had damaged AMJ's building and caused roof leaks, which damaged interior finishes. To remediate this storm damage, Mr. Hall recommended the following repairs: (1) a complete roof tear off and replacement of the building's roof; (2) replacement of all hail-dented metal building components (parapet copings, gas flues, and hatch covers, vents, missing louvers, overhead doors); (3) replacement of all flashing and individual R-panels on the connector building; (4) replacement of all hail damaged skylight domes; (5) replacement of damaged fin/coil assemblies on each unit along with dented HVAC shrouds; (6) a cost estimate for restoration of all interior water damage be performed

EXHIBIT C

unless confirmed reports indicated that this damage pre-dated the April 12, 2016 storm. This report confirms Kent's estimate.

As a result, AMJ has incurred actual damages of $2,465,138.82 ($2,506,917.60 less the prior payment of $41,778.78) for the unpaid damages to its building. To date, however, Hartford has failed to pay sufficient policy benefits for the proper repair of the damage to AMJ's building from the April 12, 2016 storm.

## VI. Causes of Action for Breach of Contract

According to the insurance policy that Plaintiffs purchased, Hartford has the duty to investigate and pay Plaintiffs policy benefits for claims made for damages caused by windstorm and hail to AMJ's office building. As a result of this damage, which is covered under Plaintiffs' insurance policy with Hartford, Plaintiffs' property has suffered extensive property damage. Hartford has breached this contractual obligation and the subject insurance policy by failing to timely and properly pay Plaintiffs sufficient policy benefits for the cost to properly repair the storm damage to its office building. Hartford has also breached the contractual provisions on timely investigating, adjusting, and paying Plaintiffs' storm damage insurance claim. As a result of these breaches of contract, Plaintiffs have suffered the damages that are described in this petition.

## VII. Causes of Action for Violation of Chapter 542 of the Texas Insurance Code

Hartford's conduct that is described herein violates Chapter 542 of the Texas Insurance Code. Within 15 days after the receipt of either actual or written notice of Plaintiffs' storm damage insurance claim, Hartford did not request from Plaintiffs any items, statements, and forms that it reasonably believed at that time would be required from Plaintiffs for its claim. As a result, Hartford has violated Chapter 542 by failing to accept or reject Plaintiffs' claim in writing within 36 days after receiving either actual or written notice of its claim. Hartford has also violated Section 542.058 by failing to pay Plaintiffs' claim within 75 days after it received either actual or written notice of the claim or within 60 days after any other applicable statutory period.

5

**EXHIBIT C**

Hartford also owes this eighteen percent per annum interest on its $85,140.81 payment, which was untimely in violation of Chapter 542 of the Texas Insurance Code. In the event it is determined that Hartford owes Plaintiffs any additional monies, then Hartford has automatically violated Chapter 542 of the Texas Insurance Code.

### VIII. DTPA Causes of Action

Plaintiffs incorporate all the allegations in this petition for these causes of action against Hartford under the provisions of the DTPA. Plaintiffs have met all conditions precedent to bringing these causes of action against this Defendant. Specifically, the violations of Hartford of the DTPA include, without limitation, the following matters:

A. By its acts, omissions, failures, and conduct that are described in this petition, Hartford has violated Sections 17.46 (b) (5), (7), (12) and (20) of the DTPA. In this respect, Defendant's violations include, without limitation, (1) its unreasonable delays in the investigation, adjustment and resolution of Plaintiffs' claim, (2) its failure to properly investigate Plaintiffs' claim, (3) its hiring of and reliance upon biased adjusters, engineers, and roofing consultants to obtain a favorable, result oriented reports and estimates to assist Defendants in low-balling Plaintiffs' windstorm and hail damage claim, and (4) its failure to pay for the proper repair of Plaintiffs' property after its liability had become reasonably clear;

B. As described in this petition, Defendant represented to Plaintiffs that their insurance policy and Defendant's adjusting and investigative services had characteristics or benefits that they did not have, which gives Plaintiffs the right to recover under Section 17.46 (b)(5) of the DTPA;

C. As described in this petition, Defendant represented to Plaintiffs that their insurance policy and Defendant's adjusting and investigative services were of a particular standard, quality, or grade when they were of another in violation of Section 17.46 (b)(7) of the DTPA;

D. As described in this petition, Defendant represented to Plaintiffs that their insurance policy and Defendant's adjusting and investigative services conferred or involved rights, remedies, or obligations that it did not have, which gives Plaintiffs the right to recover under Section 17.46 (b)(12) if the DTPA;

E. By representing that Hartford would pay to repair the damages caused by windstorm and hail and then not doing so, Defendant has violated Sections 17.46 (b)(5), (7) and (12) of the DTPA;

F. Hartford has breached an express warranty that the damage caused by windstorm and hail would be covered under the subject insurance policy. This breach entitles Plaintiffs to recover under Sections 17.46 (b) (12) and (20) and 17.50 (a) (2) of the DTPA;

EXHIBIT C

G. Hartford's actions and conduct, as described in this petition, are unconscionable in that they took advantage of Plaintiffs' lack of knowledge, ability, and experience to a grossly unfair degree. Defendant's unconscionable conduct gives Plaintiffs the right to relief under Section 17.50(a) (3) of the DTPA; and

H. Hartford's conduct, acts, omissions, and failures, as described in this petition, are unfair practices in the business of insurance in violation of Section 17.50 (a)(4) of the DTPA.

All of the above-described acts, omissions, and failures of Hartford are a producing cause of Plaintiffs' damages that are described in this petition.

### IX. Causes of Action for Unfair Insurance Practices

Plaintiffs incorporate all the allegations in this petition for these causes of action against Hartford under the Texas Insurance Code. Plaintiffs have satisfied all conditions precedent to bringing these causes of action. By its acts, omissions, failures, and conduct, Hartford has engaged in unfair and deceptive acts or practices in the business of insurance in violation of Chapter 541 of the Texas Insurance Code. Such violations include, without limitation, all the conduct described in this petition plus Hartford's failures to properly and reasonably investigate Plaintiffs' claim. They also include Hartford's unreasonable delays in the investigation, adjustment, and resolution of Plaintiffs' claim and their failure to pay for the proper repair of Plaintiffs' property on which Defendant's liability had become reasonably clear. They further include Defendant's hiring of and reliance upon biased adjusters, engineers and roofing consultants to obtain favorable, result-oriented reports and estimates to assist them in low-balling Plaintiffs' windstorm and hail damage insurance claim and Defendant's failure to look for coverage and give Plaintiffs the benefit of the doubt. Specifically, Hartford is guilty of the following unfair insurance practices:

A. Engaging in false, misleading, and deceptive acts or practices in the business of insurance in this case;

B. Engaging in unfair claims settlement practices;

C. Misrepresenting to Plaintiffs pertinent facts or policy provisions relating to the coverage at issue;

EXHIBIT C

D. Not attempting in good faith to effectuate a prompt, fair, and equitable settlement of Plaintiffs' claim on which Defendant's liability has became reasonably clear;

E. Failing to affirm or deny coverage of Plaintiffs' claim within a reasonable time;

F. Refusing to pay Plaintiffs' claim without conducting a reasonable investigation with respect to the claim; and

G. Failing to provide promptly to a policyholder a reasonable explanation of the basis in the insurance policy, in relation to the facts or applicable law, for the denial of a claim or for the offer of a compromise settlement.

Hartford has also breached the Texas Insurance Code when they breached their duty of good faith and fair dealing. Defendant's conduct as described herein has resulted in Plaintiffs' damages.

## X. Cause of Action for Breach of Duty of Good Faith and Fair Dealing

Plaintiffs incorporate all the allegations of the preceding paragraphs for this cause of action. By its acts, omissions, failures and conduct, Hartford has breached its common law duty of good faith and fair dealing by low-balling Plaintiffs' claim without any reasonable basis and by failing to conduct a reasonable investigation to determine whether there was a reasonable basis for its claim decision. Hartford has also breached this duty by unreasonably delaying payment of Plaintiffs entire claim and by failing to settle Plaintiffs' total claim because it knew or should have known that it was reasonably clear that the entire claim was covered. Hartford's acts, omissions, failures, and conduct proximately caused Plaintiffs' damages.

## XI. Waiver and Estoppel

Hartford has waived and is estopped from asserting any defenses, conditions, exclusions, or exceptions to coverage not contained in any reservation of rights or denial letters to Plaintiffs.

## XII. Damages

The above described acts, omissions, failures and conduct of Hartford has caused Plaintiffs' damages which include, without limitation, the reasonable and necessary cost to

EXHIBIT C

properly repair the storm damage to its building from the April 12, 2016 storm in the amount of $2,411,776.80 plus any investigative fees and cost incurred during the adjustment of the claim. Plaintiffs are also entitled to recover the amount of its claim plus eighteen percent per annum interest on those claims against Hartford as damages for the unpaid amounts plus on the amount that Hartford did pay under Section 542.060 of the Texas Insurance Code. All the damages described in this petition are within the jurisdictional limits of the Court.

### XIII. Additional Damages

Hartford has also "knowingly" and "intentionally" committed deceptive trade practices and unfair insurance practices as those terms are defined in the applicable statutes. Because of Hartford's knowing and intentional misconduct, Plaintiffs are entitled to additional damages under Section 17.50(b) (1) of the DTPA and Chapter 541 of the Texas Insurance Code.

### XIV. Exemplary Damages

Hartford's breach of its duty of good faith and fair dealing owed to Plaintiffs was done intentionally and with "malice" and "gross negligence" as those terms are defined in Chapter 41 of the Texas Civil Practice and Remedies Code. These violations by Hartford are the type of conduct that the State of Texas protects its citizens against by the imposition of exemplary damages. Therefore, Plaintiffs seek the recovery of exemplary damages in an amount to be determined by the finder of fact that is sufficient to punish Hartford for its wrongful conduct and to set an example to deter this Defendant and others similarly situated from committing similar acts in the future.

### XV. Attorneys' Fees

As a result of Hartford's conduct that is described in this petition, Plaintiffs have been forced to retain the undersigned attorneys to prosecute this action and has agreed to pay reasonable attorneys' fees. Plaintiffs are entitled to recover these attorney's fees under Chapter 38 of the Texas Civil Practices and Remedies Code; Chapters 541 and 542 of the Texas Insurance Code; and Section 17.50 of the DTPA.

EXHIBIT C

### XVI. Rule 194 Requests for Disclosure

Pursuant to Rule 194 of the Texas Rules of Civil Procedure, Hartford is requested to disclose, within 50 days of service of this request, the information or material described in Rule 194.2(a) through (i).

WHEREFORE, PREMISES CONSIDERED, Plaintiffs demand a *trial by jury* and also request that Defendant be cited to appear and answer, and that on final hearing, the court award Plaintiffs a judgment against Defendant for the following:

1. Actual, economic, consequential, additional, and exemplary damages in an amount within the jurisdictional limits of the court;

2. The 18% per annum interest as damages for the amounts that Hartford paid and all unpaid amounts under Chapter 542 of the Texas Insurance Code;

3. Reasonable attorneys' fees through trial and on appeal;

4. Pre-judgment and post-judgment interest as provided by law;

5. Costs of court; and

6. Such other and further relief to which Plaintiffs may be justly entitled.

Respectfully submitted,

*Loree & Lipscomb*
777 East Sonterra Blvd., Suite 320
San Antonio, Texas 78258
Telephone: (210) 404-1320
Facsimile: (210) 404-1310

By: /s/ Robert W. Loree
Robert W. Loree
State Bar No. 12979200
rob@lhllawfirm.com

**Attorney for Plaintiff**

**EXHIBIT C**

# 68881

| | | |
|---|---|---|
| IN RE: | § | IN THE DISTRICT COURT OF |
| | § | |
| BEXAR HAIL | § | |
| | § | BEXAR COUNTY, TEXAS |
| COMMERCIAL | § | |
| | § | |
| CLAIM LITIGATION | § | CIVIL JUDICIAL DISTRICT COURTS |

## STANDING PRETRIAL ORDER CONCERNING BEXAR COUNTY COMMERCIAL HAIL CLAIMS

This order applies to pretrial matters in commercial property insurance cases filed in the District Courts of Bexar County, Texas that involve insurance disputes arising from the hail storms occurring in Bexar County in April and May of 2016. The purpose of this order is to expedite pretrial matters, discovery and mediation in order to minimize court costs and litigation expenses.

This order shall be posted on the Bexar County District Clerk website and shall be attached to the Original Petition of applicable cases. All attorneys and parties should endeavor to notify others about this order.

Parties seeking to be excused from any part of this order must set a hearing and request relief from the court.

**AUTOMATIC ABATEMENT** – The filing of an original answer by the commercial insurance carrier shall trigger an immediate and automatic abatement. The case shall remain abated until 30 days after a mediation impasse.

The abatement period will apply to all court ordered deadlines and Rule 190 discovery deadlines. The abatement period will not apply to the deadlines in this order or to any statutory deadline, interest or penalties that may apply under any statutory code or law. The parties may send written discovery during the abatement time period, however, the responses and objections to those discovery requests will not be due until 30 days after the end of the abatement period.

**MEDIATION** – The parties shall agree to a mediator and to a mediation date. An Agreed Mediation Order, in the form attached, shall be filed with the court within 120 days after the answer is filed.

Within 15 days of an unsuccessful mediation, the parties will submit a proposed Agreed Scheduling Order to the court.

**DISCOVERY** – Within 120 days of the filing of an answer by the commercial insurance carrier, the parties will use their best efforts to exchange information and documentation pertaining to the commercial property, including the following: expert reports, engineering reports, estimates of damage or repairs; contents lists for contents damage claim(s); photographs; repair receipts or invoices; the non-privileged portions of the commercial insurance carrier and adjusting company's claims file (including all claim diary notes, activity logs, loss notes and email correspondence regarding the insurance claim); payment ledger, payment log and/or proof of payment from the insurance carrier; a copy of the insurance policy in effect at the time of the respective storm claim(s); and the non-privileged portions of the underwriting file. If the insurance carrier is not in possession of the adjusting company's/adjuster's claims file, and the adjusting company/adjuster is not named as a party in the lawsuit and represented by separate counsel, then the insurance carrier shall seek the adjusting company's claims file and use their best efforts to exchange this information within the 120 day time period. The insurance carrier is also ordered to notify

# 68881



PLAINTIFF'S EXHIBIT A

EXHIBIT C

# 68881

the independent adjusting company that all emails, activity notes and loss diary notes pertaining to the hail storm claim in litigation shall be preserved and not destroyed. Finally, a privilege log will also be produced in accordance with the Texas Rules of Civil Procedure for any redactions or privileges asserted. Within 180 days of the filing of an answer by the commercial insurance carrier, the parties will use their best efforts to exchange accounting and financial documentation and other information pertaining to any claims for business interruption, loss of business income, lost profits, inventory or food loss (provide list with values), lost business expense, accounts receivable and any other business loss claim.

Any expert reports, engineering reports, contractor estimates or any other estimates of damages or repairs obtained pursuant to this order for settlement, demand, or mediation purposes and exchanged prior to mediation shall be for mediation purposes only and shall be considered confidential, except that any estimates and/or reports that are part of the claims file, which were obtained or prepared during the claims handling, shall not be considered confidential under this paragraph. However, if a consultant, whose report is produced for mediation, is designated as a retained testifying expert and does not produce a subsequent report for use at trial, the mediation report shall not remain confidential.

Confidential reports and estimates are only confidential for the lawsuit in which they are being used. Confidential expert reports designated for mediation purposes shall be returned to the providing party within 14 days of a written request. Such reports shall not be discoverable or admissible at trial or any hearing. If the party procuring the report designates the expert to testify, such party shall have the right to prevent discovery or testimony by the expert regarding the mediation report and any opinions therein, provided that a subsequent report is produced. The procuring party may use data such as measurements and photographs without waiving this privilege. Nothing herein shall prohibit the use of those reports and estimates in any subsequent insurance claims or lawsuits involving the same commercial insurance carrier.

Once a mediation date and mediator are agreed to by all parties, the commercial insurance carrier shall be permitted to inspect the property involved in the lawsuit (as soon as practicable) prior to mediation. If mediation is unsuccessful, the commercial insurance carrier and other defendants may re-inspect the property with the same, new or additional experts pursuant to the Texas Rules of Civil Procedure.

Signed on November 30, 2016

*Michael E. Mery*
Michael Mery, Judge
37th District Court

*Stephani A. Walsh*
Stephani Walsh, Judge
45th District Court

*Antonia Arteaga*
Antonia Arteaga, Judge
57th District Court

*David A. Canales*
David A. Canales, Judge
73rd District Court

2

68881

EXHIBIT C

**68881**

_____
John D. Gabriel, Jr., Judge
131st District Court

_____
Renée Yanta, Judge
150th District Court

_____
Laura Salinas, Judge
166th District Court

_____
Cathleen Stryker, Judge
224th District Court

_____
Peter Sakai, Judge
225th District Court

_____
Richard Price, Judge
285th District Court

_____
Sol Casseb III, Judge
288th District Court

_____
Karen H. Pozza, Judge
407th District Court

_____
Larry Noll, Judge
408th District Court

_____
Gloria Saldaña, Judge
438th District Court

11/30/2016 VOL 4665 PG 1-818

3  **68881**

**EXHIBIT C**

# 68881

## AGREED MEDIATION ORDER

Pursuant to the Standing Pretrial Order Concerning Bexar County Commercial Hail Claims, the parties agree to the following mediation date and mediator:

Date: _____

Mediator: _____

The court, hereby, approves and orders the above date and mediator as agreed by the parties.

Each side shall pay an equal portion of the mediation fee.

All parties must have in attendance a representative with full authority to enter into a final settlement agreement. The following shall be personally in attendance at the mediation until excused by the mediator:

1. An attorney of record for each party, unless the party is self-represented.

2. All individual parties, either plaintiff or defendant, except that individual defendant adjusters and insurer employee defendants are not ordered to attend so long as a representative with full authority to negotiate and settle on their behalf is present.

3. A representative of each non-individual party, unless the parties agree otherwise in writing.

Signed and entered on _____, 2016.

_____
Judge Presiding

11/30/2016 VOL 4655 PG 188-19

68881

EXHIBIT C